### GRECO v. PRATT CHUCK CO.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1908.)

1. MASTER' AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.

In an action both at common law and under the employer's liability act for injuries to an employé operating a machine, caused by a co-employé starting the machine, evidence *held* to justify a finding that the co-employé, intrusted with the duty of instructing the employé, had not ceased instructing him at the time of the accident, authorizing a recovery.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 978–980.]

2. SAME—INSTRUCTING EMPLOYÉ—OBLIGATION OF EMPLOYER.

An employer hiring an inexperienced employé to work on a dangerous machine owes him the duty to instruct him in its operation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 314.]

3. SAME.

Where an employer delegates a person to instruct an inexperienced employé to work on a dangerous machine, and injury results to the employé

because of the negligence of such person while acting for the employer, the employer is liable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 418, 419.]

McLennan, P. J., and Kruse, J., dissenting.

Appeal from Trial Term, Herkimer County.

Action by Philip Greco against the Pratt Chuck Company. From a judgment for plaintiff and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Frederick G. Fincke, for appellant.

S. M. Vella, for respondent.

SPRING, J. The complaint charges the defendant with negligence both at common law and under the employer's liability act. The defendant is a domestic corporation operating a plant in Frankfort, Herkimer county, in which it manufactures iron chucks and nipples. On the 28th day of August, 1904, the plaintiff, who was an Italian unfamiliar with the use of machinery and who had been in this country for less than two months, was employed by the defendant and set to work on one of the machines in its factory. This machine consisted of a bed plate upon an iron table about eight feet in length, and a metal plunger or punch was moved horizontally along this plate, striking a die. A round metal disc about three inches in diameter was dropped between the plunger and the die, and, when struck by the plunger, was made into a cup, which was forced through the plate, dropping out at the end of the machine. When the plunger ran back from the die, the open space was about one half inch, and in the operation the workman dropped the disc in front of the plunger; and that was the work the plaintiff was directed to do. The machine was started by an iron lever standing upright at the lower end of the machine. In the operation of the machine, it was necessary to drop the disc in the right place and in time to get it properly located before the plunger came in contact with the die, otherwise it would be crushed or bent and clog the machine, and the machine had to be stopped with the lever and the battered disc and broken pieces taken out. A fellow countryman of the plaintiff named Canepa had been employed in the factory for some time, was familiar with the operation of this machine, and he was ordered by the superintendent of the defendant to instruct Greco in its use which he proceeded to do. The plaintiff thus describes the conversation between him and Canepa before the instruction and work upon the machine commenced:

"When I first started to work, Christopher Canepa was there with me. Canepa told me that I should not be afraid of the machine; that 'I would learn you how to run it, and you wouldn't get hurt. Don't be afraid. I will give you warning every time before I start the machine.' Canepa told me that I should run the machine. 'I will learn you, and you needn't be afraid. In case it stopped and the machine started up, I will let you know it. There won't be any danger.' In the morning I started working. The boss told me

that he should teach me. 'You needn't be afraid. I will learn you. I won't leave you until I see you understand about running it.' Canepa told me that, in case of the machine stopping, 'I will let you know. In case the machine should stop, I will let you know, and you couldn't get hurt.' Canepa told me that he was told by the head boss that he should teach me how this machine should run. He didn't say anything until he started the machine. That is all he told me before I started to work. He said he was going to show me how to run it."

Canepa instructed the plaintiff how to place the discs, how to clean out the broken pieces, and to stop and start the machine, and to pry the punch back when it became fast. Canepa worked for half an hour in using the machine in the presence of the plaintiff. He then stayed by the machine, watching, assisting, and advising the plaintiff in the work. The machine quite often became clogged, and the plaintiff cleaned out the broken pieces, going from one side of the machine to the other to do so, as he was instructed to do. Just before he was injured, the machine became clogged, and the plaintiff was cleaning out the broken pieces, when Canepa asked him if he was through. The plaintiff said "No." Canepa carelessly pulled the lever, starting the machine, which caught the plaintiff's hand, and crushed it against the die and cut off the four fingers. The answer admits the employment of the plaintiff, his instruction by one of the employés, and his injuries. There was no dispute in the evidence, and Canepa corroborates the plaintiff.

The court permitted the jury to determine whether Canepa had finished instructing the plaintiff at the time his hand was crushed. He charged the jury that, if the instruction had finished, there could be no recovery; and, further:

"If, on the contrary, the instruction was not finished, if the plaintiff was injured upon the machine upon which he was to work during the course of his instruction, without negligence on his part and solely because of the negligence of the instructor who was engaged at the time in such instruction, I say to you that as a matter of law the defendant is liable for any damages which the plaintiff sustained by reason of the accident in question."

I think the jury were justified in finding that the instruction had not ceased when Canepa set in motion the plunger which injured the plaintiff. One of the essential features of the instruction was the operation of the lever to start the machine. Canepa at that time was endeavoring to educate the plaintiff in the manipulation of the machine. He had remained by it continuously from the beginning of his instructions. He had no other business in connection with it or with the plaintiff, except to teach him to run it. It was not necessary for Canepa, when he placed a disc in front of the plunger, to inform the plaintiff that he was instructing him. Nor would he be expected, when he pulled the lever at one time, to say that this is for instruction, and at the next pull that it was for his own amusement, and not to enlighten the plaintiff. There is no separation in the kind of work performed by Canepa while at the machine. He was sent there to fulfill a distinct definite duty. The superintendent a part of the time was near the machine. There was no suggestion that the instruction should terminate. Whether, in fact, he had ex-

plained sufficiently to the plaintiff, is not important. The extent of the instruction was intrusted to the teacher, and he evidently believed he should continue advising the plaintiff. When he completed his duty, he would be expected to go elsewhere and leave the operation of the machine to his pupil. He did not do that. He was still engaged in instructing, so that his negligence occurred during the period of that duty which he was explicitly charged to render, and the specific act may have been proper in its performance. Had the plaintiff's hand not been in front of the punch, the starting of the machine by Canepa would have been proper, and in the line of his duty as instructor. He happened to start it negligently. By so doing he did not at once cease to be the representative of the defendant in the particular work assigned to him. It is apparent that the plaintiff had not become sufficiently skillful to enable him to operate the machine successfully. He was constantly troubled by the clogging of the machine, which indicated that he had not yet learned how to place the discs accurately. The defendant owed to him, as he was inexperienced, the duty of instructing him in the operation of the machine. It recognized its obligation and selected the employé to act in its behalf, and he was the alter ego of the defendant. For his negligence causing injury to the plaintiff the defendant is liable. Fox v. Le Comte, 2 App. Div. 61, 37 N. Y. Supp. 316, affirmed on opinion below, 153 N. Y. 680, 48 N. E. 1104; Strauss v. Haberman Mfg. Co., 23 App. Div. 1, 48 N. Y. Supp. 425; Tivnan v. Keahon, 117 App. Div. 50, 101 N. Y. Supp. 1076.

The principle of a detail of the work which often exonerates the employer does not enter into this case. It is elementary that the master who hires an inexperienced servant to work on a dangerous machine must instruct him in its operation. Brennan v. Gordon, 118 N. Y. 489, 494, 23 N. E. 810, 8 L. R. A. 818, 16 Am. St. Rep. 775. If he delegates some one to perform this obligation, and injury results to the servant because of the negligence of the representative while acting for the master, the latter of course, is liable the same as if he personally had carelessly caused the injury. Mann v. President, etc., of D. & H. Canal Co., 91 N. Y. 495, 500. The principle is reiterated in Brennan v. Gordon, 118 N. Y. 494, 496, 23 N. E. 811, as follows:

"That, if the master selects a co-servant in his employment to instruct and qualify the servant for the new and more dangerous service, the master must select a competent instructor, or be liable for his incompetency or his negligence while performing the duty of instructor, or for the discontinuance of his instruction until it is completed, by which the promoted servant is injured and, if such is the case, the master will be liable for the injury, and it will be no defense that the injury was caused by one servant to his co-servant, for the servant whose negligence caused the injury stands for the master, and the latter is liable in such case the same as if the injury was caused by the personal negligence of the master. * * * The defendants were not only bound to furnish plaintiff with an instructor absolutely competent to manage an elevator, but the defendants were also bound to provide such an instructor for a reasonable length of time to teach the plaintiff how to manage the elevator, and that the instructor should be guilty of no negligence to the injury of the plaintiff while he was being instructed."

Imaginary cases can be suggested either extending or narrowing the rule adverted to which may seem ridiculous, and that is so as to any principle. We are not, however, disposing of extreme cases which fancy may create. We have a concrete one before us, and in this case we hold that the defendant is liable because at the time of the injury Canepa was still engaged in instructing the plaintiff. Nor are we concerned with the credibility of the plaintiff or Canepa. There was no conflict in the evidence, and the verdict of the jury settles the inferences properly deducible in favor of the plaintiff.

The defendant's counsel does not claim the verdict is contrary to the weight of the evidence. He assumes the truthfulness of the narration of Canepa, and consents that the court apply the law upon that assumption.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except McLENNAN, P. J., and KRUSE, J., who dissent in opinion by KRUSE, J.

KRUSE, J. (dissenting). The only witnesses to the accident seem to have been Greco the plaintiff, who was hurt, and Canepa, his friend, who was showing him how to work at the machine where he was hurt. The defendant employed Greco, the plaintiff, at the solicitation of Canepa, who was delegated by the defendant's superintendent to show Greco how to run the machine. Both Greco and Canepa testified that Greco was cleaning out the machine with his fingers; that Canepa asked him whether he had finished; that Greco replied that he had not; that thereupon Canepa turned the lever which set the machine in motion, and cut off Greco's fingers. There is no claim that Canepa did not hear the plaintiff's answer, or misunderstood. While the plaintiff had only been in this country a few months, he seems to have been a countryman of Canepa, and each spoke a common language. Canepa says that he does not know why he turned on the machine. He thinks he was nervous or confused, but he fails to point to any circumstance which made him nervous or put his mind in a state of confusion. He seems to have done just what he intended to do, namely, set the machine in motion, knowing at the time that Greco had his fingers in this place of danger; at least, that is what he testifies to.

I am not convinced that we have a full and accurate statement of just how this accident occurred. At all events, I think the testimony is so inherently improbable that we are not required to believe it. But, assuming it to be true, was that act, under the circumstances, an act of instruction or in any way connected with the instruction which Canepa was giving to Greco? I think not. It does not appear that he was at that time telling him, or showing him, how to operate the machine, or doing anything which would aid Greco in operating the machine. These two men had worked together for two or three hours at this machine. It was not a complicated machine. Its operation was quite simple. The machine had stopped. The plaintiff was cleaning it out, and I do not see how the act of Canepa in setting the machine in motion can be regarded as a part of the instruction he was giving Greco. I do not think it is the law that the master is liable

for every negligent act of the instructor, occurring between the commencement and ending of the instruction. It is the character of the act rather than the position which the negligent person occupies that determines the liability of the master. This rule was finally settled in Crispin v. Babbitt, 81 N. Y. 516, 37 Am. Rep. 521, and has been adhered to ever since, except as it has been modified by statutes like the employer's liability act. But that, I think, has not extended the employers' liability so as to include every negligent act of an instructor, irrespective of whether or not it is connected with that duty.